Good afternoon, your honors. May it please the court. My name is Susan Hill and I represent the petitioner, Mr. Haddadin. Mr. Haddadin is here because he is afraid of returning to Jordan, his native country, and wishes to apply for asylum. He filed a motion to reopen in front of the immigration judge, and granted that first motion to reopen was denied for an error in law, which is not an issue here in the case today. Mr. Haddadin filed a motion to reconsider, which was denied by the immigration judge. He appealed that denial to the Board of Immigration Appeals, which summarily affirmed. Hence, we're left with the opinion of the immigration judge per the law in this circuit. Mr. Haddadin is opposed to the immigration judge's decision. First of all, that decision is very brief. It's difficult to review in a way. It was written in, actually it was a one-page prepared form that the immigration court uses. And then in the margin of the decision, the judge made a handwritten notation. And that notation simply said that Mr. Haddadin had not established a, that the evidence had not established a fear of persecution on account of religious grounds, should he return to Jordan. And then it said, especially considering that Mr. Haddadin's church was not officially hounded by the Jordanian government, and that it was registered with the government. First, Mr. Haddadin has a problem with that decision, because it did not fully address all of the claims that he put forth in the motion to reopen, or the motion to reconsider. Could I ask you about the motion to reopen? As part of the requirements for causing the immigration judge to grant the motion, you're required to raise affidavits and other evidentiary material that support the change, the position that there was a change in country circumstances. In looking through the material that was in the record, all I saw was the asylum application itself, which is required to be attached, and then a letter from the pastor and a news article. Explain how that's adequate evidentiary basis for the immigration judge to say there's new evidence to reopen. Yes, Your Honor. According to law in the circuit, an applicant's statements and the evidence is supposed to be taken as true, unless it's inherently unbelievable. Here, Mr. Haddadin- Is that only for testimony? The only cases I've seen with that are testimony. Is there a case that says that's true about an application asylum as well, an asylum application as well? I don't recall if there is a case that speaks specifically to the testimony, or if it was just a motion to reopen. I'm sorry, I'm not- I mean, this is not really evidence. It's not- well, I guess it is signed into penalty and perjury, so I guess it is. And again, the statute doesn't require that he submit affidavits or anything. There is no- It does require affidavits. It says affidavits and other evidentiary material. Correct. This is 103.23B3. But this is essentially an affidavit. Correct, yes. It's something submitted under penalty and perjury. Right. And I was going to say, it's not limited strictly to affidavits. He can submit other evidence as well. But in this case, he did sign the asylum application. And what in the asylum application- there's a very brief- there's a paragraph- supports his claim of changed country circumstances. There's some very general statements about there's a jihad, there's obviously change after 9-11. But anything specific to his claim? Well, yes, he does discuss how different members of his family have been treated. But they're not dated, those claims. I'm sorry? The claims are not dated. No. Well, they are not dated, but I would say in the context of the application, he does say since the Iraqi invasion of- I'm sorry, since the American invasion of Iraq, which occurred in March of 2003. And this motion to reopen was submitted in April of 2003. But it's certainly the case that a lot of what's in here is not new, right? I mean, it's certainly not new. I mean, my family, entire family- that's really the problem I'm having as well, which is what in here goes to change circumstances? Since he says, my entire family is Christian. We've been persecuted for years. Many of my relatives have been arrested, jailed, exiled for their religious and or political beliefs with no date. There's no indication that that's recent. So what is there in here that we could ascribe other than the general atmosphere? I mean, because of the Iraq War and 9-11, that's a changed circumstance. With regard to religious persecution, Your Honor, he did state that a government recently closed the Assembly of God Church. And I think he said within the last month, I believe. That was actually not in his sworn testimony. That was in the lawyer's statement of the case, I believe. I did make a reference. Let me find that for you. Oh, page 84 of the administrative record. And that's that testimony. Oh, I'm sorry. You are correct. That is in the motion to reopen. Then, no, I do not recall seeing that in his assignment application. I apologize then. However, that's with regard to his religious persecution fear. He also feared persecution on account of the fact that he is married to an American citizen and that they have American citizen children. Do you understand? He checked religion, membership in a particular social group and torture convention, not political opinion or nationality or race. I understood that really to just be part of the religion claim as saying not only do they like Christians, they especially don't like American Christians. But is there more to it than that? I would roll that in, too. Yes, I suppose a member of a particular social group. But even if you do want to put it under the religion portion, it is a new factor related to his religion and a new development within the country because the American invasion engendered anti-American sentiments in Jordan. Because of that, he had heard news that Christians and Americans were being targeted in Jordan since that had happened. Again, his asylum application did refer back to, I think he said in the past month or the past six weeks, something like that. He pinpointed these new conditions around the American invasion of Iraq. Because that had just happened and he is fearing the reprisals. Again, this was filed in April of 2003 and it was fairly new. Admittedly, he did not have a lot of independent corroborating evidence. But then when this went up into the motion to reconsider, the government did file some purportedly corroborating evidence. They are seeking not to corroborate but to rebut his claims. That was actually, you could consider it old evidence because I believe it was prepared prior to the American invasion. But at a minimum, it did support his assertions that with regard to religion, the proselytizing is not allowed. He is a born-again Christian and he does consider it part of his essence, his being, to proselytize his religion. Therefore, in the situation that was going on, which was still fomenting, still developing, he had that fear. And it was at that time when the motion was denied. If you want to reserve the rest of your time. Yes, I would, please. Thank you very much. Thank you for your argument. Mr. Bronstein. Good afternoon, Your Honors. I am Josh Bronstein for the Attorney General. I'd like to start to just correct a factual, I think, misstatement. On page 51 of the record, that International Religious Freedom Report indicates that the government, I'll quote, generally does not prohibit citizens from proselytizing. And I think that report itself is kind of key. Not that the government had any burden whatsoever in this case. In fact, the converse is, of course, true. The petitioner had a very high burden in order to show that he now had a well-founded fear of future persecution in Jordan based on changed conditions in Jordan. His evidence simply does not support that. As the Court noted, the most he can provide, or did provide, was a few very conclusory statements in his asylum application. I think the documentary evidence that was appended to that motion bears absolutely no relationship or very little relationship whatsoever to his personal plight or the plight of Christians in Jordan in general. And I think looking at the statements that he has made in that application, it becomes clear that those statements are not fleshed out at all. They are not specific, as the Court has pointed out. Well, some of them are quite specific. And the question is whether they're adequate to show up. Whether they're adequate in terms of time. I mean, I do think that the fair implication of at least the piece about her mother's store being vandalized and being ordered to close her store, the fair implication is that that was recent. Well, regardless of the temporal scope of that, Your Honor, his statements about why that happened or how that happened are not only vague, but they're internally inconsistent. At one point he says at page 89 of the record that his mother's store was, quote, she has been ordered by the government of Jordan to close her store, which is clearly an order by the government. And then the next, if you want to read implications, I suppose the next, the only inference at page 93, I'm quoting, her store has been closed because of threats. These threats come in the form of notes left on the property that if she doesn't close the shop, it will be burned along with everything in it. So I don't think. Well, there's no inconsistency there. I mean. Well, either the government ordered her to close the store or someone else. But that's why you have hearings. So the real question is whether he said enough to, is the standard prima facie case or what's the standard? Well, the standard is, before this Court, is whether it was an abuse of discretion to deny reopening in this case. And again. And do we factor into that the fact that the kinds of questions we're talking about are not answered anywhere because there's a one-sense opinion? No, Your Honor, because I think the judge's decision, and again, this Court assumes unless there's evidence to the contrary, that the agency has indeed considered all the evidence. Well, we know for a fact that the IJ the first time around was deciding a completely different case. But on the motion to reopen, he denied it on adjustment of status grounds. So he wasn't reading very carefully. So then we come back, and then he makes a motion to reconsider. He said, wait, wait, that isn't what I was arguing. I was actually arguing for reopening on asylum. And then we get one sentence back. And I think that that one sentence is adequate, particularly because Petitioner didn't preserve any, he didn't raise to the Board a procedural due process problem or an inadequacy issue. I mean, he is. But does he need to? We still have to have something to review. And certainly the quality of the opinion has something to do with what we, with whether we think it's an abuse of discretion or not. The standard is abuse of discretion. I don't disagree with that. But I think the opinion has to be commensurate with the quantum and quality of the, of the evidence that Petitioner provided. As the Court noted, his evidence is meager. And that's my characterization of it. But it is, in my view, meager. And the government's just. Well, what about the standard that the one sentence of the IJ seemed to apply, where he has this conclusory sentence, and then I'm having trouble finding it right in front of me at the moment. But it's. It's at page 43, Your Honor. What, I think it's important that, first of all, the immigration judge determined that he didn't establish a prima facie case for, for asylum, which is one of the grounds on which to deny reopening. And then the immigration judge's decision notes that he failed to persuade the judge to reopen in his discretion. And then the judge adds that information, which I think Petitioner has highlighted, to sort of underlying supporting aspects rather than, I think, what is, what is easily sustained by the record, which is the IJ's determination that the evidence offered by Respondent does not establish that country conditions of Jordan have changed sufficiently or at all so as to place the alien in danger of religious persecution. All right. Dash, dash. Especially since this church is. It's definitely in light. Just a minute. Right. Especially since this church is one registered with and not officially hounded by the Jordanian government. First of all, that's the wrong standard, right? Because, because the question isn't whether it's officially hounded by the Jordanian government, but whether he is being persecuted by people because of his religion and the government can't control it. So. But there was a specific statement in, in the, the, in his brief regarding this, which the government then rebutted, I believe. May I ask you about this checklist form? Is this a standard form that's being used by immigration judges? You know, Your Honor, I'm not, I'm not sure one way or the other. I don't know. It doesn't have a designation on it as to whether it's a, it's a, it's a specifically INS or other DHS ICE form, but. So you don't know whether this is just this immigration judge or this office is using these forms or whether this is something that the, the BIA has developed? No, I don't know. Okay. But I think that in this case, I think that the judge adequately states exactly and properly characterizes his opinion in this case, which is, no, you have not shown that you now have a well-founded fear that you make out a prima facie case of a well-founded fear of future persecution in Jordan on account of your religion, based upon conditions that have changed in Jordan. Indeed, the IJ says succinctly, but I think appropriately, that he didn't establish that the country conditions have changed at all. And I think that that's true. He makes a series of conclusory allegations, his own views of what's going on in Jordan, but without fleshing out the specifics. And again, he has the burden. And as the Supreme Court noted, it's a high burden. Can we just go back to my question about the especially clause? How would you, do you agree that if that were the standard being applied, it would be an erroneous standard, but maybe it wasn't the whole standard being applied? Well, I think the judge applied the standard, Your Honor, in the beginning. I understand that, but I'm asking you about the second clause. I mean, as you're basically saying we should just forget it, which is an emphatic statement that doesn't really subtract from his more general statement, or what? I think the judge has given the petitioner the benefit of the doubt. And that statement, and if you'll allow me, that statement is actually more than the petitioner deserves on this record, because the judge accepted the characterization of petitioner's counsel in the brief, rather than the declaration in the asylum application or anywhere else, as to which was petitioner's church. I do not believe that it says anywhere in that asylum application even what church he belonged to. So the judge has accepted this characterization and then said this is registered with and not. And I think the term hounded is clearly a term of art, but I think that it makes clear you are not in danger of being harmed based upon your religion and or affiliation with this church, assuming, I add, assuming that you're affiliated with this particular church. Counsel, I think following up on Judge Berzon's question, would you concede that if a person was going back to a country in which he or she was going to be hounded and persecuted by vigilantes, and that the official position of the government was anti-vigilante, but in point of fact the government was not able to protect people against vigilantes, that that would be sufficient to show that the, in other words, that the government either was turning a blind eye, as one court described it, or simply was ineffectual? I think that under much, I don't have enough specific facts or certainties. I would say that if the petitioner was seeking a motion to reopen, and that case were before this court, the question would be, did he come forward with sufficient evidence, supported by affidavits and other evidence, to warrant reopening? And the rest should be within the discretion of the government. But in this case, rather. This is the problem. If we, more or less, well, the reading teely is because we have such a one-sentence opinion, but if we read the one-sentence opinion, there's at least a good guess that he was under an erroneous impression with regard to the answer of Judge Singleton's question, or why wasn't he? In other words, it appears that, wouldn't it be an abuse of discretion for a judge to deny even a motion to reopen on the ground that he didn't demonstrate that it was the government that was hounding him? Would you agree with that much? Would it be, I'm sorry. Would it be abuse of discretion if he said, the reason I'm not going to grant reopening is because his evidence doesn't demonstrate that it was the government that was hounding him? Oh, I see what you're saying in that case. Yes. If that were an error. Well, I think that going directly to this case, I think the answer is clearly not. Because he began with the statement that conditions in Jordan have not changed. And I think that is clearly borne out by that International Religious Freedom Report, which is really, apart from these totally nonspecific statements by the petitioner, that is the strongest evidence of record. What was the date of that? I was confused about that. The date of that was 2002. But I add, and I think this is critical, I add that there is not a numeric limitation on this kind of motion. In other words, if conditions in Jordan really have changed, which I submit that they have not, but it's not within the record before the Court, but if they really have changed, he can file another motion. He can file another motion tomorrow if he gets it before anybody tries to deport him. Exactly. Exactly. And it's not within the administrative record. But I dare say that he's not going to find a religious freedom report from the State Department that supports his claim. And so this is a petitioner who came before the agency with very little, if any, evidence showing what he was required to show. And the judge's decision made, you know, perhaps was not as well articulated or as extensively articulated as the Court or even we would like. But I think it's more than adequate. But don't we have a lot of case law about the degree of articulation? And aren't we having the problem we're having precisely because it was so short and inarticulate? No, I don't think. Well, number one, there is case law on that. Number two, the petitioner didn't raise that as an assignment of error. And so it's not exhausted, and he waived it. So it's not, that question isn't really before the Court. But I would say this. There was very little evidence presented. The IJ's decision makes clear that he considered the evidence, and not just the evidence, but also considered petitioner's counsel's characterization of that evidence and additional statements by counsel and accepted them as evidence. In other words, putting the best face possible on his evidence and adding, embellishing that evidence with evidence that's not of record, the immigration judge still found that he didn't meet his burden. And so rather than finding that this is an abuse of discretion, I think it goes the other way, which is the immigration judge gave him more than he deserved with respect to evidence that wasn't even presented. And so I think that in a case like this, where he couldn't, and I think it's best stated like this, if a petitioner is required to come forward with evidence showing that the conditions in his country have changed such that people in his situation, in this case Christians, now face persecution and he has a well-founded fear of persecution based thereon, he should be required at the very least to come forward with evidence that bad things happened to people in his situation. At least one person. And what about his mother's? Well, I guess it's a technical question. But would you consider, I mean, there's no statement again because the non-opinion is so terse about whether the IJ would find, if the question were before him, that what happened to his mother was indicative of something that was likely happened to him. But what about that? Why isn't that specific enough? Well, because, Your Honor, again, I mean, I think that it is, you know, I respectfully disagree with your character, and I think it is inconsistent to say that the government ordered it closed, ordered the business closed. And as Judge Ikuda noted, there's no statement of dates. There's no statement of circumstances. And it doesn't indicate just who ordered, you know, who threatened her or ordered her. It's so vague as to be non-evidence. It's not probative of changed country conditions, which is the only or the critical question before the immigration judge and the critical question on which this petitioner bore the burden. So if he can't come forward with a sworn declaration with direct, credible, and specific evidence of something, and again, this court in the Malte case said, you know, sometimes they can't get, petitioners cannot get affidavits or declarations from people living abroad. Now, in this case, the religious freedom reports and the State Department reports don't indicate that this petitioner would have had a problem. This is not, Georgia is not a war-torn country where people can't get information in and out. And as a matter of fact, he had to have gotten the information he had from somewhere. But I would note that with respect to that international religious freedom report, there's no indication, the one in the record, and he's not come forward with anything worse, that any Christians have been harmed. And that is directly conflicting with, and I think that it would show up. I mean, they say there are no reports whatsoever of Christians being harmed. Well, she wasn't harmed. She was threatened, according to him. Right. But we don't know by whom or when. Because of her religious opinion is what he says. We don't, well, we're not, it's not really clear as to why she was ordered to close that or why she was threatened to close that. And so, I mean, I could go on, but the fact is that he really hasn't. I think that I will not. In closing, I would say that clearly this petitioner has fallen far short of meeting his burden. And although, sure, the IJ's decision is more than adequate to express that petitioner has failed and explained why he's failed to meet his burden for reopening. Thank you very much. Ms. Lawrence. Yes. With regard to your question, Judge Ikuda, I've been practicing many, many years, and my firm handles many motions to reopen. And while we do see that form that you were asking about, I can't remember any other instance where it's not accompanied by a full written decision explaining the judge's reasons for denying the motion to reopen. I don't recall ever seeing it appearing by itself, and I think this is the only case where I've seen a judge annotate a handwritten note in the margin. And that's here in the Los Angeles area I'm talking about. I believe the government stated that the brief failed to raise the sufficiency of the judge's decision, but it did say in the brief that the judge made this handwritten annotation and failed to cite to any authority and support thereof. I would argue that that's sufficiently raising the issue if it is a concern here for the court. And again, I believe there is great concern with the shortness, the brevity of this decision and how it does not list any details or reasons for the denial, essentially. There is, again, a silent case law, but there's also, with regard to cancellation of removal cases and trying to get a case reopened with a motion to reopen, this court addressed that in Franco Rosendo. And it stated that even though the judge, it differentiated, and I apologize because I read the case a little while ago, and I don't recall the case that Franco Rosendo referred to, but it distinguished itself because in the case that it was distinguishing, it said, there at least the judge said, I have considered all these factors, and therefore the respondent has not established the requisite hardship for cancellation of relief. Whereas in the Franco Rosendo case, the judge didn't even say that much. He just said, essentially, I am denying relief here. I say that's the same situation as in Mr. Haddad's case. The judge did not really sufficiently explain his decision or indicate that he had considered all the factors, especially the anti-Americanism. And again, with his short, short reference to the church being registered, it was addressed in the brief before this court. The church is not registered as a church. It's registered as a society, if we are going to go down that road of acknowledging that the judge gave credence to the statement that was made in the motion to reopen about it being the Assembly of God Church. And the judge made a mistake saying that this is a registered church. It's not a registered church. So therefore, the decision should not be allowed to rest on that factor alone. And moreover, Mr. Haddad doesn't fear just the Jordanian government. He fears the Muslim population at large. He states in several places that it is, I think, a percentage of between 95% and 98% Muslim in the country. And an unofficial or perhaps official, depending on how you look at it, jihad has been declared. I read it in the context of the population declaring that jihad, not the government. However, the government, he is afraid, will not do anything to protect him in the face of this jihad that's been declared. And as I said earlier, he filed this within a month or two of these events happening. Perhaps that explains why there was not more supporting evidence. But again, unless his facts that are stated are inherently unbelievable. When did he file it? He filed, I think, April 24th was the date of the motion to reopen. Of 2000. Of 2003. And the invasion took place March 20th of 2003. And it did refer back to events in the last month leading up to the invasion. So about two months thereafter. Oh, and finally, I'm sorry, this is a little bit out of order, but I wrote my notes down. As far as the country conditions or any report that was relied upon to rebut any assertions made in Mr. Haddad and his motion to reopen, again, the case law here establishes that that can only rebut generalized assertions and not individualized assertions. But in any event, at this point, you are not to be looking at that, right? The question is whether he's set out a prima facie case, and then if so, you have a hearing. Exactly. And that's exactly what I was going to conclude. That's the point of having a hearing, is to look at this more individually. Okay. Thank you very much, and thank both of you for a very helpful argument. The case of Haddad v. Gonzales is submitted. The case of Perez v. Estrue is submitted under briefs. And the last case of the morning is Biomedical Research v. Thane International. This is the one we don't have another lawyer for. Yes. Is the other lawyer not here? Oh, you are here. Okay. I wanted to say one thing, which is some of the material was submitted under seal. No one has made any motion with regard to this argument, so we're proceeding as usual. If there's any issue about any sealed document in the discussion,
judges: Berzon, Ikuta, Singleton